# COURT OF APPEALS OF VIRGINIA

## Record No. 2118-24-2

KELLY ANTOINE MURCHISON

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Opinion Issued July 21, 2026[*]

### FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge[1]

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[2] Attorney General; Mason D. Williams, Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### CHIEF JUDGE MARLA GRAFF DECKER

Kelly Antoine Murchison appeals his convictions for possession of a controlled substance, distribution of a controlled substance (second offense), and possession of a firearm with a controlled substance in violation of Code §§ 18.2-248, -250, and -308.4. He argues that the trial court erred by denying his motion to suppress and ruling that the evidence was sufficient to support his convictions. We hold that the trial court did not err and affirm the convictions.[3]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Designate Charles J. Maxfield ruled on the suppression motion. Judge Bondurant presided over the jury trial and conducted the sentencing.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in

On March 15, 2023, the New Kent County Sheriff's Office received a report from a citizen about narcotics sales at 7125 Lovegrass Court. The informant described the seller and his car, as well as the purchaser and his truck.

*Surveillance and Informant's In-Person Report*

Sheriff's Office Detective Sergeant Michael Connolly conducted surveillance to validate the citizen-informant's report. He drove by the home five to seven times over a two-week period. Most times, he saw a car in the driveway that matched the tipster's description of the seller's car, although sometimes in "the middle of the day" the car was not there. Connolly determined that the car was registered to Murchison at a Richmond address. The detective also determined that Patricia Blackwell owned the home. Photographs of Murchison, Blackwell, and the house appeared on Blackwell's Facebook page, along with a photograph of the couple behind a picture-frame-style sign that read, "Home Sweet Home."

Detective Connolly's "static surveillance" on three other days provided additional information. Either early or late on those days, a Chevrolet pickup truck matching the informant's description of the narcotics buyer's vehicle parked in the driveway for less than a minute. One of those times, Connolly saw a man matching Murchison's description walk from the residence to the driver's door of the buyer's truck and reenter the house less than a minute

---

the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[4] "On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn []from [it].'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

later.[5]  Based on the detective's training and experience, he "recognized the behaviors" as consistent with narcotics sales.

Detective Connolly met in person with the citizen-informant, who confirmed her original report.  She identified a photograph of Murchison, accurately described his vehicle, stated that he "reside[d]" at the home on Lovegrass Court, and explained that he had been living there "for quite some time."  The informant added that she had seen "a firearm partially concealed in his waistband" on "multiple occasions."  Murchison told her "he always had a firearm on him."  His wife confirmed in a conversation with the informant that he "always carried" one.  The informant explained that she lived with the narcotics buyer and personally "observed the items . . . purchased."  Further, she described the buyer's truck, which matched the description of the truck that the detective had seen pull briefly into and out of the driveway of the Lovegrass-Court home three times.  When Connolly checked the truck's registration, it "c[a]me back to" someone else's name at the informant's address, around the corner from Murchison, confirming her report that she lived with the buyer.

*Affidavits and Search Warrant Applications*

Using the informant's report, his interview with her, and his own surveillance, Detective Connolly applied for two search warrants for firearms, ammunition, and related items and documents, with one warrant for Murchison and the second one for the Lovegrass-Court home and car.  The warrants did not mention drugs.

In the supporting affidavits, Detective Connolly noted his training and experience as a law enforcement officer.  He explained that he had received information from a "concerned [adult] citizen" whom he spoke to personally and referred to as his source of information (SOI).

---

[5] The other two times, the detective "was not in a position to see what actually occurred in the driveway."

- 3 -

Connolly related that the SOI had no criminal history and "no reason to be untruthful" regarding the information reported. She was not related to Murchison or any member of his household. According to the detective, her information had "prove[d] to be true and accurate."

Detective Connolly relayed that the SOI reported "personally witnessing" Murchison carrying a partially concealed firearm on two occasions, the second of which was about six weeks before she talked to the detective. He noted the statements of Murchison and Blackwell to the informant that he always carried a gun. The SOI identified a "DMV photograph" of Murchison and confirmed, based on having "recent[ly]" been to the Lovegrass-Court home, that he lived there. Connolly described his surveillance and stated that Murchison appeared to reside at the home to be searched. The detective also noted Murchison's two felony convictions, including one for possession of a firearm by a convicted felon. The affidavits did not mention the suspected drug sales. The magistrate issued the requested search warrants.

*Execution of the Search Warrants*

On March 30, 2023, police stopped Murchison's car to execute the search warrant for his person. That search of his person yielded cash, a driver's license, and a cell phone. After a narcotics canine "alerted" to the presence of drugs in the car, officers searched it and found a loaded 9-millimeter magazine and a package of baggie corners containing white powder, both within reach of the driver's seat.[6]

Police also executed the warrant for the Lovegrass-Court home. On and in a nightstand in the largest bedroom, they found a clear plastic bag of several baggie corners containing a white powder, medicine bottles bearing Murchison's name, his outdated driver's license, and mail addressed to him. In that bedroom's closet, police located scales, scissors, "plastic bags

---

[6] The loaded magazine was in the car's center console. The foil-wrapped package of baggie corners was on the floorboard behind the console, in view of the driver's seat.

with [the] corners r[emoved]," a 9-millimeter handgun, an AR pistol, two containers of ammunition, and "legal paperwork" with Murchison's name on it. The 9-millimeter magazine recovered from Murchison's car fit the handgun found in the bedroom closet. When the search conducted pursuant to the warrant for firearms revealed drugs and drug paraphernalia, the officers obtained an additional search warrant for the residence, which allowed them to search for and seize the drugs.[7]

*Motion to Suppress and Trial Court Proceedings*

Murchison made a motion to suppress the evidence obtained in the searches of his person, his car, and the Lovegrass-Court home. He argued that the affidavits were insufficient to support the search warrants because the informant's reliability was unknown. He suggested her report that Murchison carried a gun was stale. He added that Detective Connolly never saw Murchison with a firearm, did not determine whether his gun rights had been restored, and did not observe any illegal behavior while surveilling the home. Defense counsel argued that the affidavits inaccurately stated the informant had "no relation to" Murchison when in reality she was a neighbor who alleged that "Murchison was selling [narcotics to] her live-in." As a result, he contended the warrants were invalid. He also argued that a "properly trained law enforcement officer[] knew or should have known that the information was . . . not sufficient [to prove] probable cause for the issuance of a search warrant." Finally, he suggested that the search of the vehicle was tainted by the search warrant violation and "d[id] not qualify for [the good-faith] exception to the exclusionary rule."

The prosecutor opposed the motion, arguing that the detective's investigation and the informant's observations supported the warrant and, in any event, "good faith" applied.

---

[7] That later warrant and the related seizures are not separately contested on appeal.

The trial court denied the motion to suppress. It pointed to Detective Connolly's testimony that the informant reported Murchison carried a gun "[a]t all times" and a criminal records check showed he was a convicted felon. The court ruled the informant's statement that "she saw him with a gun" provided probable cause for the search warrants because "simple possession [of a gun by a convicted felon] at any time is a violation of the law." It noted defense counsel's argument that "the detective should [have] go[ne] further and f[oun]d out if [the informant had] an axe to grind." The court ruled that the detective "did go further" by conducting "at least three days" of surveillance and saw "what his experience t[old] him [wa]s likely drug transactions." The court also stated, "[I]t's just common sense that drugs are often found in that environment."

*Trial and Sentencing*

The evidence at trial proved that the white powdery substance found in two locations—in the foil in Murchison's car and in the plastic baggie corners on his bedroom nightstand—tested positive for cocaine. The loaded firearm magazine from Murchison's car fit the pistol found in his bedroom closet. Additionally, both that pistol and the second one were "opera[ble]." Detective Connolly opined that the items in Murchison's car and home were consistent with the packaging of drugs for sale and distribution.

At the close of the Commonwealth's case, defense counsel made a motion to strike the evidence, arguing it was insufficient to show that Murchison possessed the drugs in the car or knew they were there. Counsel also argued that the evidence failed to prove Murchison lived at the house or constructively possessed the drugs or guns found there. The trial court denied the motion. Murchison presented evidence in his defense but did not renew his motion to strike after resting. He also did not make a motion to set aside the verdict.

The jury found Murchison guilty of the charged offenses. He was sentenced to serve twenty-five years in prison with seventeen years and two months suspended.[8]

ANALYSIS

I. Constitutionality of the Searches

Murchison argues that the trial court erred by denying his motion to suppress the evidence found in the searches of his person, his car, and the Lovegrass-Court home. He challenges the search of his car and the seizure of the contraband from the car and house only to the extent that he alleges those actions were unreasonable due to shortcomings in the initial two warrants.[9]

A. General Legal Principles

In reviewing the denial of a motion to suppress, the appellate court considers the evidence "in the light most favorable to the Commonwealth," the party who prevailed in the trial court. *Sample v. Commonwealth*, 303 Va. 2, 9 (2024) (quoting *Branham v. Commonwealth*, 283 Va. 273, 279 (2012)). This Court "give[s] deference to the [circuit] court's factual findings and [considers] *de novo* the application of law to those facts." *Ray v. Commonwealth*, 74 Va. App. 291, 302 (2022) (quoting *Joyce v. Commonwealth*, 72 Va. App. 9, 14 (2020)).

---

[8] *See infra* note 16.

[9] No separate search warrant was issued for the car. Instead, the search warrant for the home authorized a search of "vehicles registered to . . . Murchison located on the property." Murchison does not argue on appeal that the car search was unreasonable because the car was not "located on the property" at the time. *See* Rule 5A:20(e). In any event, the car search occurred after a narcotics canine conducted a "free-air sniff" outside the lawfully stopped car and "alerted" to the odor of drugs coming from inside it. *See generally Commonwealth v. Knight-Walker*, ___ Va. ___, ___ (Apr. 16, 2026) (noting that a narcotics canine's sniff during a traffic stop can be lawful if it does not "measurably extend the duration of the stop" (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009))); *Moore v. Commonwealth*, 85 Va. App. 634, 647 (2025) (recognizing that using a narcotics dog during a traffic stop "'generally does not implicate legitimate privacy interests'" and "can provide probable cause to search [the] motor vehicle" (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009))).

Murchison challenges searches conducted pursuant to warrants.  He suggests that despite the warrants, the searches violated the Fourth Amendment to the United States Constitution. That amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation."  U.S. Const. amend. IV; *see* Va. Const. art. I, § 10; *see also Henry v. Commonwealth*, 32 Va. App. 547, 551 (2000) (stating that "protections under Virginia's Constitution and statutes are 'substantially the same as those contained in the Fourth Amendment'"[10] (quoting *Lowe v. Commonwealth*, 230 Va. 346, 348 n.1 (1985))).  "The 'basic purpose' of th[e a]mendment . . . is 'to safeguard the privacy and security of individuals against arbitrary invasions by government officials.'"  *Chatrie v. United States*, ___ U.S. ___, ___ (June 29, 2026) (quoting *Carpenter v. United States*, 585 U.S. 296, 303 (2018)).  In the event of a violation, the exclusionary rule may "prohibit[] the introduction of evidence, tangible or testimonial, acquired during an unlawful search."  *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019).

But certain specific legal principles apply when a search is conducted pursuant to a warrant.  *See generally Chatrie*, ___ U.S. at ___ (discussing the Fourth Amendment's preference for searches conducted pursuant to "a warrant [issued by] 'a neutral and detached magistrate'" (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948))).  "A judicially issued search warrant is entitled to a 'presumption of validity,' and a defendant challenging a resulting search bears the burden of rebutting that presumption."  *Hamm v. Commonwealth*, 85 Va. App. 183, 189 (2025) (quoting *Harvey v. Commonwealth*, 76 Va. App. 436, 461 (2023)).  Consistent with this principle, a court reviewing the validity of a warrant and its supporting affidavit must give great

---

[10] Murchison does not challenge the principle that the United States and Virginia Constitutions provide the same protections in this area.

deference to the magistrate's determination. *Taylor v. Commonwealth*, 66 Va. App. 619, 631 (2016); *see Illinois v. Gates*, 462 U.S. 213, 236 (1983). "This deferential standard ' . . . further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *Taylor*, 66 Va. App. at 631 (quoting *Anzualda v. Commonwealth*, 44 Va. App. 764, 775 (2005) (en banc)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Brown v. Commonwealth*, 68 Va. App. 517, 525 (2018) (second and third alterations in original) (quoting *Gates*, 462 U.S. at 238-39).

The guiding legal standard for warrants is clear. A valid search warrant must be supported by probable cause. *See, e.g.*, *Anzualda*, 44 Va. App. at 774-75. "When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied to him." *Taylor*, 66 Va. App. at 635 (quoting *Anzualda*, 44 Va. App. at 775). And probable cause exists when, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place." *Harvey*, 76 Va. App. at 462 (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). "[This] standard 'does not "demand any showing"' that a police officer's belief regarding criminal activity be '"correct or [even] more likely true than false."'" *Byrd v. Commonwealth*, 57 Va. App. 589, 595 (2011) (en banc) (quoting *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003)).

Here, the case began with a citizen-informant. An informant's tip may contribute to probable cause "so long as the officer has reasonable grounds to believe the [information] is true." *Id.* (alteration in original) (quoting *McGuire v. Commonwealth*, 31 Va. App. 584, 594-95 (2000)). Assessing an informant's tip involves a "flexible, common-sense" approach that permits "establish[ing] the credibility of [the] informer in a variety of ways." *Id.* at 597 (first quoting *Gates*, 462 U.S. at 239; and then quoting *McGuire*, 31 Va. App. at 595). The

- 9 -

informant's "reliability and basis of knowledge" are "'highly relevant' factors in the overall totality of the circumstances analysis." *Jones*, 277 Va. at 179 (quoting *Gates*, 462 U.S. at 230).

One factor bearing on reliability is whether the informant is a citizen or a confidential criminal-informant. *See Polston v. Commonwealth*, 24 Va. App. 738, 745 (1997), *aff'd on other grounds*, 255 Va. 500 (1998). Although "[c]itizen-informants do not carry the same presumption of reliability as police officers, . . . less evidence is required to establish their veracity than [for] criminal informants." *Lester v. Commonwealth*, 30 Va. App. 495, 501 (1999) (quoting *Corey v. Commonwealth*, 8 Va. App. 281, 287 (1989)). "If the informer is a disinterested citizen who is either the victim or eyewitness [to] a crime, the magistrate is permitted to infer that reasonable information obtained from the citizen is reliable." *Polston*, 24 Va. App. at 745. And "even if [there is] some [reason to] doubt . . . an informant's motives, h[er] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles h[er] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. Finally, "[p]olice corroboration of an informant's tip [i]s . . . 'consistently recognized' as [contributing to] informant reliability." *Byrd*, 57 Va. App. at 597 (quoting *Gates*, 462 U.S. at 241).

We consider the application of these principles to the facts of this case.

B. Probable Cause and the Good-Faith Exception to the Exclusionary Rule

Murchison argues that the magistrate erroneously determined that probable cause supported issuing the search warrants. He contends that the citizen-informant was not proved to be reliable, her basis of knowledge was unknown, and her information about his firearm possession was stale. He also notes that the detective did not determine whether his gun rights had been restored.

Applying a well-accepted principle of appellate review, which allows us to decide the case on the best and narrowest ground, we assume without deciding that the contents of the search warrant applications and affidavits were insufficient to provide probable cause to search for firearms and ammunition. *See Morris v. Commonwealth*, 77 Va. App. 510, 517 n.2 (2023) (en banc). But that assumption does not end the legal inquiry. Instead, we must consider whether the exclusionary rule applies. We now hold under a very similar analysis applying the instant facts and legal principles that the exclusionary rule does not apply. The best and narrowest ground for decision here is that the good-faith exception to the exclusionary rule rendered the searches reasonable and thus constitutional. *See Ward v. Commonwealth*, 273 Va. 211, 221, 225 (2007); *Lane v. Commonwealth*, 51 Va. App. 565, 571 (2008).

The exclusionary rule, which serves as the basis for suppressing unconstitutionally seized evidence, is "designed to deter police misconduct." *Polston*, 255 Va. at 503 (quoting *United States v. Leon*, 468 U.S. 897, 916 (1984)). So the "suppression of evidence obtained pursuant to a warrant should be ordered . . . only in those unusual c[ircumstance]s in which exclusion will further the purposes of the . . . rule." *Id.* (quoting *Leon*, 468 U.S. at 918); *see Freeman v. Commonwealth*, 65 Va. App. 407, 420 (2015) (recognizing that "exclusion 'has always been [a court's] last resort, not [its] first impulse'" (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)). As a result, the exclusionary rule is subject to what is known as the good-faith exception. *Ward*, 273 Va. at 222 (citing *Leon*, 468 U.S. at 913-25). This exception recognizes that the deterrent effect provided by the exclusionary rule simply "is not present when a police officer, acting in objective good faith, obtains a search warrant from a magistrate and conducts a search within the scope of th[at] warrant." *Id.* (quoting *Polston*, 255 Va. at 503). Both the merits analysis and the good-faith analysis require an evaluation of probable cause. *See Adams v. Commonwealth*, 275 Va. 260, 274 (2008). But "[t]he showing of an 'objectively reasonable

- 11 -

belief' that probable cause existed under the good-faith exception is a significantly lesser standard than a showing of a 'substantial basis' for upholding a magistrate's determination of probable cause." *Id.* When the evidence meets the "objectively reasonable" belief standard of the good-faith exception, exclusion is not required. *See Ward*, 273 Va. at 222-24.

Two evidentiary considerations are key when evaluating whether the good-faith exception applies in this case. First, "[a]n officer's decision to obtain a warrant is prima facie evidence that [t]he [officer] . . . was acting in good faith." *Adams*, 275 Va. at 273 (quoting *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)). Second, the appellate court "can, and should, 'look to the totality of the circumstances *including* what [the executing officers] knew but did not include in [the] affidavit'" supporting the warrant. *Id.* at 270 (second alteration in original) (emphasis added) (quoting *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987)).

We also consider principles related to the staleness of information in the search-warrant context because Murchison contends that the citizen-informant's report about his firearm possession was too old to be relevant. It is important to note as a threshold matter that "no fixed standard or formula establish[es] a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant." *Johnson v. Commonwealth*, 259 Va. 654, 671 (2000). "[A] warrant will be tested for 'staleness' by considering whether the facts alleged . . . provided probable cause to believe, at the time the search . . . was conducted, that [it] would lead to the discovery of evidence of criminal activity." *Id.* (quoting *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984)).

Detective Connolly obtained search warrants for Murchison and his Lovegrass-Court home and car. These warrants serve as prima facie evidence that he acted in good faith.[11] *See Adams*, 275 Va. at 273. And in examining Murchison's suggestion that the trial court should nevertheless have granted his motion to suppress, this Court considers the totality of the citizen-informant's reports combined with Detective Connolly's investigation, both as stated in the affidavits and as augmented by his testimony. *See id.* at 270.[12]

The affidavits stated that the informant twice personally observed Murchison carrying a concealed firearm. They also conveyed that Murchison and Blackwell personally told the informant that he "always" carried a firearm. Additionally, just before applying for the warrants, Detective Connolly conducted surveillance that corroborated other portions of the informant's report, increasing the likelihood of the accuracy of her statements about the firearm and defeating Murchison's claim of staleness.

First, Detective Connolly corroborated various innocent details of the informant's report, including where Murchison lived and what car he drove. Connolly's search of Department of Motor Vehicles records confirmed that Murchison owned the car described by the informant, and in the two weeks before the warrants were issued, the detective routinely saw the car in the driveway at the Lovegrass-Court home, both at night and in the morning. Although Murchison

---

[11] Even if good faith did not validate the search of the car because it was not "located on the property" at the time of the search, as specified in the warrant, that search was nevertheless supported by probable cause. *See supra* note 9.

[12] "'The trial court is presumed to know and correctly apply the law,' absent contrary evidence." *Smith v. Commonwealth*, 78 Va. App. 371, 390 n.6 (2023) (quoting *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022)); *see Commonwealth v. Moncrea*, ___ Va. ___, ___ (Apr. 2, 2026). Here, the trial court specifically relied on information that Detective Connolly testified he gained in his surveillance of the Lovegrass-Court home but that was not contained in the affidavits supporting the search warrant applications. As a result, we conclude that the trial court denied the motion to suppress based on its application of the good-faith exception. *See Adams*, 275 Va. at 270 (directing the reviewing court to consider everything the executing officers knew but did not include in the affidavit provided to the magistrate for purposes of the good-faith exception).

did not own the house, he appeared in photos on the Facebook page of the owner, Blackwell, who was his wife. One of Blackwell's photos showed the house, and in another, the couple posed together behind a large picture-frame-style sign that said, "Home Sweet Home."

Second, the detective corroborated incriminating details from the informant regarding the drug transactions she reported. She related that a man whose truck she described was buying narcotics from Murchison. Connolly's records check reflected that the truck's registered owner lived at the same address as the informant, confirming her firsthand basis of knowledge. Connolly himself saw the truck driven to the Lovegrass-Court home three times over a span of six days in a manner that the detective knew, based on his training and experience, was consistent with a series of drug purchases. Although the detective did not include these details in his affidavits, he testified about them. These facts supported his conclusion, which was set out in the affidavits, that the informant had reliable firsthand knowledge.

Notably, the trial court specifically relied on the detective's corroboration when it upheld the searches, implicitly concluding that the confidential source's report that Murchison routinely possessed firearms was not stale. The court pointed out Connolly's more contemporaneous observations of the suspected narcotics sales and observed the "common sense" connection "that drugs are often found in that environment." *See Brown*, 68 Va. App. at 527 (observing that an event "occurring [even] substantially before the issuance of a search warrant" could contribute to probable cause and considering the remote information in combination with more recent activity to uphold a search warrant for illegal drugs (quoting *Pierceall v. Commonwealth*, 218 Va. 1016, 1021 (1978))); *see also Commonwealth v. Smith*, 281 Va. 582, 593 (2011) (noting "the connection between illegal drug operations and guns in our society is a tight one" (quoting *United States v. Grogins*, 163 F.3d 795, 799 (4th Cir. 1998))).

Finally, we reject Murchison's argument that the searches for firearms were not supported by probable cause because his gun rights could have been restored. Probable cause does not require "certitude" or even proof by a preponderance. *See Evans v. Commonwealth*, 290 Va. 277, 287 (2015). Detective Connolly knew that Murchison had two prior felony convictions, one of which was for possession of a firearm by a convicted felon. This evidence established that for at least some period of time, his right to own a firearm was restricted. That it might later have been restored was insufficient to defeat a showing that Connolly acted in good faith in believing that the warrants for firearms authorized the searches. *Cf. Whitaker v. Commonwealth*, 279 Va. 268, 277-78 (2010) (holding that an individual's act of carrying a concealed weapon provided probable cause for arrest and that possession of a concealed-carry permit was a defense for assertion at trial).

Murchison makes an additional claim of error implicating the circumstances in which the good-faith exception does not apply. *See Ward*, 273 Va. at 222-24 (addressing four situations in which the exception is inapplicable).[13] He suggests that the warrant incorrectly stated the informant had "no relation to" Murchison and that this was "[in]accurate" because she was "a neighbor" who alleged that he was selling drugs to her "live-in." This claim fails for two reasons.

First, the claim is not factually accurate. Although the affidavit identifies the informant as "a concerned citizen with no relationship to" Murchison, it also explains that she had been inside his Lovegrass-Court home recently, confirmed he lived there, saw him with a firearm, and spoke to him and his "significant other" long enough for both of them to tell her that he "always"

---

[13] We assume without deciding that Murchison provided adequate argument and authorities, as required by Rule 5A:20(e), to warrant our addressing this claim in relation to good faith and did not intend to raise it merely as a factor defeating probable cause. *See Morris*, 77 Va. App. at 517 n.2.

- 15 -

carries a firearm.  These collective statements in the affidavits clearly reflect some connection between the two.

Second, although the claim that the warrant contained "[in]accura[cies]" *implicates* a circumstance in which the good-faith exception may not apply, it is insufficient to *fully* satisfy that circumstance.  The relevant situation in which the exception does not apply involves misleading the magistrate with inaccurate "information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *Ward*, 273 Va. at 222 (quoting *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004)).  It requires proof by a preponderance that the allegedly false statement was made either "intentionally[] or with reckless disregard for the truth" *and* was "necessary to the finding of probable cause."  *West v. Commonwealth*, 16 Va. App. 679, 689 (1993) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  Here, Murchison has not alleged, either below or on appeal, that the detective made the alleged false statement intentionally or recklessly.  To the contrary, Murchison argues that Detective Connolly "incorrectly assumed . . . that the unverified source of information had nothing to gain from providing information and put herself at risk by disclosing this information."  This alleges a negligent misrepresentation at best and does not establish an intentional or reckless falsehood.

Consequently, the information in the search warrant affidavits, coupled with Detective Connolly's corroborating trial testimony, supports the trial court's ruling denying Murchison's motion to suppress the incriminating evidence found as a result of the two challenged searches.

II.  Sufficiency of the Evidence to Prove Possession of Drugs and Firearms

Murchison challenges the sufficiency of the evidence to prove that he constructively possessed a controlled substance either alone or with a firearm.  This challenge conflicts with a well-established rule of court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of the rule is to 'afford the trial court an opportunity to rule intelligently on the issues presented, th[ereby] avoiding unnecessary appeals and reversals.' . . . . In addition, 'a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.'" *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (quoting *Weidman v. Babcock*, 241 Va. 40, 44 (1991)); *see Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity . . . ." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). If a party fails to timely and specifically object, he waives his argument on appeal. *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009).

Murchison accurately acknowledges that he failed to preserve his sufficiency claim in the trial court in accordance with Rule 5A:18. This is so because, while he made a motion to strike at the close of the Commonwealth's evidence, he neither renewed the motion after presenting his own evidence nor made a motion to set aside the verdict. *See, e.g.*, *Rompalo v. Commonwealth*, 72 Va. App. 147, 154-55 (2020), *aff'd*, 299 Va. 683 (2021) (per curiam). He nevertheless asks this Court to apply Rule 5A:18's good-cause or ends-of-justice exception to this assignment of error to excuse his failure to object and to consider the assignment of error on the merits.[14] We review the applicability of the two exceptions in turn.

---

[14] We assume without deciding that Murchison's brief contains adequate argument and authorities relating to Rule 5A:18's good-cause and ends-of-justice exceptions to comply with Rule 5A:20(e). *See Morris*, 77 Va. App. at 517 n.2.

## A. Good-Cause Exception

The first Rule 5A:18 exception is "for good cause shown." "'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (en banc)). This exception applies *only* when "some objective factor external to the defense impeded counsel's efforts to comply with . . . [the] rule." *Flanagan v. Commonwealth*, 58 Va. App. 681, 694 (2011) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1968)); *cf.* Code § 8.01-384(A) (providing that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal"). Murchison does not suggest that he had no opportunity either to renew his motion to strike at the close of all the evidence at trial or to make a motion to set aside the verdict after trial, and the record does not establish a lack of opportunity. Accordingly, Rule 5A:18's good-cause exception does not apply.

## B. Ends-of-Justice Exception

The second Rule 5A:18 exception is for the purpose of allowing the appellate court to "attain the ends of justice." This "'exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Pulley v. Commonwealth*, 74 Va. App. 104, 126 (2021) (alteration in original) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)). In determining whether to apply the exception, this Court considers both whether the alleged error occurred in the first place and whether a "grave injustice" would result if the exception were not applied. *Bell v. Commonwealth*, 81 Va. App. 616, 628 (2024) (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018)); *see Commonwealth v. Bass*, 292 Va. 19, 27 (2016). To invoke the exception, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal

offense or the record must affirmatively prove that an element of the offense did not occur." *Wandemberg v. Commonwealth*, 70 Va. App. 124, 137 (2019) (emphasis omitted) (quoting *Holt*, 66 Va. App. at 210). "Th[e] burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Cisneros v. Commonwealth*, 82 Va. App. 147, 170-71 (2024) (quoting *Holt*, 66 Va. App. at 210).

As is the case here, "when an appellant raises a [challenge to the] sufficiency of [all of] the evidence . . . for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Brittle*, 54 Va. App. at 514. In other words, there must be "some reason beyond mere insufficiency" to apply the ends of justice exception. *Id.* An appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). As a result, "in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Pulley*, 74 Va. App. at 126 (quoting *Holt*, 66 Va. App. at 210). "Where the record does not affirmatively establish [such] error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

The crux of Murchison's argument is that the evidence "failed to prove" he constructively possessed the drugs and firearms. He contends that others had access to both his car and his bedroom, where drugs, drug paraphernalia, firearms, and ammunition were found. In short, he suggests the evidence supported a finding that someone other than him might have owned and possessed these items. Assuming without deciding that his suggestion is correct,[15] a

---

[15] The drugs and ammunition in the car were within Murchison's reach as he sat in the driver's seat. Illegal drugs were found on the bedroom nightstand next to his prescription

- 19 -

mere failure of proof does not permit application of the ends-of-justice exception. Nothing in the record *affirmatively* demonstrates that any element of the offenses did not occur or that Murchison was convicted of conduct that was not a criminal offense, so the exception does not apply here.

Because Murchison has not proved that either the good-cause or ends-of-justice exception applies, we hold that Rule 5A:18 bars his challenge to the sufficiency of the evidence.

CONCLUSION

The trial court did not err by denying Murchison's motion to suppress. We do not address the merits of his challenge to the sufficiency of the evidence. He waived that challenge because he did not renew his motion to strike or make a motion to set aside the verdict and Rule 5A:18's exceptions do not apply. Accordingly, we affirm the trial court's judgment and remand solely for the correction of a clerical error in the sentencing order.[16]

*Affirmed and remanded.*

---

medication. Firearms, ammunition, and drug distribution paraphernalia were found in the bedroom closet with paperwork bearing his name.

[16] At the sentencing hearing, the trial court pronounced the sentences for Murchison's three convictions, as well as the time suspended on each one. It then provided a summary of the total active time to be served. That total, however, is one year short of the active sentence issued based on the sum of the individual sentences minus the suspensions. The sentencing order sets out the identical sentences and suspensions and includes the same mathematical error. Consequently, we remand to the trial court solely for the correction of this clerical error. *See* Code § 8.01-428(B); *Howell v. Commonwealth*, 274 Va. 737, 739 n.*, 742 (2007); *Stevens v. Commonwealth*, 72 Va. App. 546, 560 n.5 (2020).